IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

CASSANDRA ALFORD,                )
                                 )
              Plaintiff,         )
                                 )
         v.                      )    1:18CV216
                                 )
ANDREW SAUL,                     )
Commissioner of Social Security,[1] )
                                 )
              Defendant.         )

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff Cassandra Alford ("Plaintiff") brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.     PROCEDURAL HISTORY

Plaintiff filed applications for DIB and SSI in March of 2012, alleging a disability onset date of February 15, 2008. (Tr. at 285-293.)[2] Her applications were denied initially (Tr. at

---

[1] Andrew Saul became Commissioner of Social Security on June 17, 2019. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Andrew Saul should be substituted for Nancy A. Berryhill as the Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

[2] Transcript citations refer to the Sealed Administrative Record [Doc. #9].

152-59) and upon reconsideration (Tr. at 161-69). Thereafter, Plaintiff requested an administrative hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. at 170-71.) Plaintiff, along with her attorney and an impartial vocational expert, attended the subsequent hearing on February 27, 2014. (Tr. at 31.) The ALJ ultimately concluded that Plaintiff was not disabled within the meaning of the Act from February 15, 2008, the alleged onset date, through May 7, 2014, the date of the decision. (Tr. at 142.) On October 27, 2015, the Appeals Council granted Plaintiff's request for review, vacated the ALJ's hearing decision, and remanded the case to the ALJ to resolve inconsistencies between the hypothetical question posed to the vocational expert and the ALJ's RFC finding. (Tr. at 149-150.) The ALJ then held a second hearing on July 26, 2016 which was attended by Plaintiff, her attorney, and an impartial vocational expert and at which Plaintiff amended her alleged onset date to May 7, 2014.[3] (Tr. at 57.) The ALJ then issued a second administrative decision, finding that Plaintiff was not disabled under the Act from May 7, 2014, the amended alleged onset date, through November 1, 2016, the day the ALJ issued her second administrative decision. (Tr. at 13-23.) The Appeals Council denied Plaintiff's request for review, thereby making the ALJ's

---

[3] The DIB program provides for payment of disability benefits to individuals who are "insured" by virtue of their contributions to the Social Security trust fund through Social Security tax on their earnings. 20 C.F.R. §§ 404.110, 404.315. To be entitled to DIB, Plaintiff bears the burden of showing that she became disabled prior to March 31, 2011, the date when her insured status expired for the purposes of DIB. (Tr. at 13, 340); 42 U.S.C. § 423(a)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). A claimant who first satisfies the medical requirements for disability only after her date last insured will not be entitled to DIB. 20 C.F.R. § 404.131(a). There is no such requirement for SSI because that program is based upon financial need. On July 26, 2016, the date of the second hearing, Plaintiff, with the assistance of counsel, submitted a "Consent to Amend Onset Date" amending her onset date of disability to May 7, 2014, approximately three years after her date last insured. (Tr. at 57, 330.) Because Plaintiff did not have coverage on her amended alleged onset date of disability, she was not entitled to DIB. However, the SSI claim survived the amended onset date. Accordingly, for her SSI claim, Plaintiff had to prove that she was disabled from May 7, 2014 (the amended onset date), through November 1, 2016 (the date of the ALJ's second decision).

November 1, 2016 conclusion the Commissioner's final decision for purposes of judicial review. (Tr. at 1.)

II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, the scope of review of such a decision is "extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the

3

responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at the first two steps, and if the claimant's impairment meets or equals a "listed impairment" at step three, "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment," then "the ALJ must assess the claimant's residual functional capacity ('RFC')." Id. at 179.[4] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can "perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the [Government] to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

---

[4] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that administrative regulations require RFC to reflect claimant's "ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (e.g., pain)." Hines, 453 F.3d at 562-63.

III.  DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" during the period from her amended alleged onset date of May 7, 2014. Plaintiff therefore met her burden at step one of the sequential evaluation process. At step two, the ALJ further determined that Plaintiff suffered from the following severe impairments:

> Chronic pain syndrome, lumbar degenerative disc disease, sleep apnea, obesity, anxiety disorder with agoraphobia, major depressive disorder, post-traumatic stress disorder, and attention-deficit hyperactivity disorder.

(Tr. at 15.) The ALJ found at step three that these impairments did not meet or equal a disability listing. (Tr. at 16.) Plaintiff does not challenge this listing determination at step three. The ALJ then assessed Plaintiff's RFC and determined that she could perform light work, except:

> she is limited to occasional climbing of stairs and ramps and precluded from climbing ropes, ladders and scaffolds. In addition, the claimant is limited to occasional bending, balancing, crouching, and stooping, and she is precluded from kneeling and crawling. Moreover, the claimant is limited to performing simple, routine, repetitive tasks involving no more than simple, short instructions and simple work-related decisions. The claimant can only tolerate few workplace changes and she is limited to occasional contact with supervisors and coworkers. The claimant can work in proximity to, but not in coordination with others. The claimant is precluded from public contact. Finally, the claimant requires the opportunity to alternate between sitting and standing at the work station every two hours with standing and walking a total of four hours in an eight-hour work day.

(Tr. at 19.) Based on the RFC determination, the ALJ found under step four of the analysis that Plaintiff could not perform her past relevant work. (Tr. at 21.) The ALJ also determined at step five that, given Plaintiff's age, education, work experience, RFC, and the testimony of the vocational expert as to these factors, she could perform other jobs available in the national

6

economy. (Tr. at 22.) Therefore, the ALJ concluded that Plaintiff was not disabled under the Act. (Id.)

Plaintiff now argues that the ALJ erred in three respects. First, Plaintiff contends that "[t]he ALJ err[ed] by failing to properly allocate weight to an opinion that is not from an acceptable medical source without providing an understandable rationale." (Pl.'s Br. [Doc. #12] at 3.) Second, Plaintiff contends that "the ALJ err[ed] by failing to discuss facts in evidence that contradicted the ALJ's conclusion." (Id.) Third, Plaintiff contends that "the ALJ err[ed] by failing to incorporate non-exertional limitations on the ability to stay on task where the ALJ first found that [she] was moderately impaired in the maintenance of concentration, persistence, or pace." (Id.)

A. Opinion Evidence

ALJs must evaluate medical opinions in accordance with 20 C.F.R. §§ 404.1527(c) and 416.927(c), better known as the "treating physician rule." This rule generally requires an ALJ to give controlling weight to the well-supported opinion of a treating source as to the nature and severity of a claimant's impairment, based on the ability of treating sources to

> provide a detailed, longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R. §§ 404.1527(c), 416.927(c). However, if "a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record," it is not entitled to controlling weight. Social Security Ruling 96-2p, Policy Interpretation Ruling Titles II and XVI: Giving Controlling Weight to Treating Source Medical Opinions, 1996 WL 374188, at

7

*4 (July 2, 1996) ("SSR 96-2p");[5] 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2); see also Craig, 76 F.3d at 590; Mastro, 270 F.3d at 178. Instead, the opinion must be evaluated and weighed using all of the factors provided in 20 C.F.R. §§ 404.1527(c)(2)(i)-(c)(6), 416.927(c)(2)(i)-(c)(6) including (1) the length of the treatment relationship, (2) the frequency of examination, (3) the nature and extent of the treatment relationship, (4) the supportability of the opinion, (5) the consistency of the opinion with the record, (6) whether the source is a specialist, and (7) any other factors that may support or contradict the opinion. Where an ALJ declines to give controlling weight to a treating source opinion, he must "give good reasons in [his] . . . decision for the weight" assigned, taking the above factors into account. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). "This requires the ALJ to provide sufficient explanation for 'meaningful review' by the courts." Thompson v. Colvin, No. 1:09CV278, 2014 WL 185218, at *5 (M.D.N.C. Jan. 15, 2014) (quotations omitted); see also SSR 96-2p, 1996 WL 374188, at *5 (noting that ALJ's decision "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the [ALJ] gave to the treating source's medical opinion and the reasons for that weight").

For purposes of this rule, "acceptable medical sources" include licensed physicians (medical or osteopathic doctors) and licensed or certified psychologists—but not physician

---

[5] The Court notes that for claims filed after March 27, 2017, the regulations have been amended and several of the prior Social Security Rulings, including SSR 96-2p, have been rescinded. The new regulations provide that the Social Security Administration "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources." 20 C.F.R. §§ 404.1520c, 416.920c. However, the claim in the present case was filed before March 27, 2017, and the Court has therefore analyzed Plaintiff's claims pursuant to the treating physician rule set out above.

8

assistants or licensed clinical social workers.[6] Social Security Ruling 06–03p, <u>Titles II and XVI: Considering Opinions and Other Evidence from Sources Who Are Not "Acceptable Medical Sources" in Disability Claims; Considering Decisions on Disability by Other Governmental and Nongovernmental Agencies</u>, 2006 WL 2329939, at *6 (Aug. 9, 2006) ("SSR 06–03p"). The latter are considered "other sources." <u>Id.</u> The Ruling explains that

> The distinction between "acceptable medical sources" and other health care providers who are not "acceptable medical sources" is necessary for three reasons. First, we need evidence from "acceptable medical sources" to establish the existence of a medically determinable impairment. Second, only "acceptable medical sources" can give us medical opinions. Third, only "acceptable medical sources" can be considered treating sources, as defined in 20 CFR 404.1502 and 416.902, whose medical opinions may be entitled to controlling weight.

<u>Id.</u> (internal citations omitted). However, the Ruling also recognizes that

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists. Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.
>
> . . . .
>
> Since there is a requirement to consider all relevant evidence in [a claimant's] case record, the case record <u>should</u> reflect the consideration of opinions from medical sources who are not "acceptable medical sources" . . . who have seen the claimant in their professional capacity. Although there is a distinction between what an [ALJ] must consider and what the [ALJ] must explain in the disability . . . decision, the [ALJ] <u>generally should</u> explain the weight given to opinions from these "other sources," <u>or otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to</u>

---

[6] SSR 06-03p has been rescinded for claims filed on or after March 27, 2017; therefore, it still applies here, because Plaintiff's claims were filed in in 2012. (Tr. at 285-293.) <u>See</u> 82 Fed. Reg. 15263-01, 2017 WL 1105348 (Mar. 27, 2017).

9

<u>follow the [ALJ's] reasoning</u>, when such opinions may have an effect on the outcome of the case.

Id. at *3, 6 (emphasis added).

Plaintiff contends, in pertinent part, that the ALJ erred in addressing a May 26, 2016 letter from Sharon Dockery, a licensed professional counselor and a licensed clinical addictions specialist, by failing to "offer[ ] an understandable rationale for her allocation of weight."[7] (Pl.'s Br. at 6-8 referencing Tr. at 758.) Ms. Dockery's letter notes that Plaintiff started treatment on March 23, 2011 and maintained sessions through December 2012, with renewed treatment in the fall of 2013 and March of 2015. (Tr. at 758.) Plaintiff "maintained and averaged weekly sessions." (Id.) Ms. Dockery states that Resolution Counseling & Developmental Services and Faith in Families have cooperated in treatment, ensuring that she receives needed medications (including Ambien, Klonopin, Celexa, Lexapro and Adderall). (Id.) Ms. Dockery lists symptoms, including night terrors, panic attacks evoking a "flight or fight" response, obsessive thoughts and behaviors causing isolation, extreme anxiety with racing thoughts and intrusive memories, and feelings of hopelessness triggering daily crying spells and loss of emotional control. (Id.) According to Ms. Dockery, Plaintiff disassociates, "causing her to lose hours of her day." (Id.) Ms. Dockery notes too that Plaintiff "maintains an acute state of anxiety and depression," with fluctuating emotional states. (Id.) According to Ms. Dockery, Plaintiff "lacks internal motivation to take care of her daily needs," and is at a

---

[7] Under the regulations in effect at the time of the ALJ's decision, neither a licensed clinical counselor nor a licensed clinical addictions specialist were considered acceptable medical sources. See Wert v. Comm'r of Soc. Sec., No. 1:17-CV-477, 2018 WL 4268935, at *15 (S.D. Ohio Aug. 16, 2018) (treating licensed clinical counselor as an "other source" and concluding that "[w]hile the Commissioner is correct that the opinions of therapists are not from 'acceptable medical sources,' the ALJ is not free to ignore a treating therapist's assessments"); Lane v. Astrue, No. 2:11CV6, 2012 WL 1032705, at *5 (W.D.N.C. Mar. 9, 2012) (treating licensed clinical addiction specialist as an "other source").

10

standstill in treatment. (Id.) She concluded that Plaintiff "may never be able to function entirely, however she hopes to maintain enough to be self-sufficient with daily tasks." (Id.) The ALJ's analysis of Ms. Dockery's letter—in its entirety—is as follows:

> While partial probative weight is assigned to the finding made by the claimant's treating counselor that she "may never be able to function entirely" because of the counselor's longstanding history of treating the claimant, the counselor is not an "acceptable medical source" as that term is defined in the Social Security Act and regulations (Ex. 1 8F).

(Tr. at 21.)

This cursory assessment is deficient for a number of reasons. First, the only reason that the ALJ provides for partially discounting Ms. Dockery's assessment is that she is not an "acceptable medical source." It is well-established that, without more, this is an inadequate reason for discounting the assessment of an "other source."[8] This alone renders the ALJ's

---

[8] See, e.g., Stevens v. Colvin, No. 1:14CV350, 2015 WL 5254299, at *6 (M.D.N.C. Sept. 9, 2015) (Peake, M.J.) ("[T]he only reason given for assigning the opinion partial weight was that 'Ms. Poulos is a nurse practitioner and [opined on an] issue reserved to the Commissioner.' . . . . [However,] Ms. Poulos' mental capacity evaluation was not just an opinion on the ultimate issue of disability reserved to the Commissioner, and as Plaintiff correctly notes, the 2012 questionnaire chronicles many non-disabling limitations not encompassed by the ALJ's assignment of weight. Thus, there is no basis or explanation given that would allow the Court to follow the ALJ's reasoning with regard to Ms. Poulos' 2012 evaluation, and it is not clear if the ALJ intended to reject the 2012 evaluation on some other basis or inadvertently omitted or mischaracterized that 2012 evaluation."); Haagenson v. Colvin, 656 Fed. App'x 800 (9th Cir. 2016) ("The ALJ also failed to provide germane reasons for rejecting the opinions of Haagenson's nurse and counselor, who constitute 'other sources' that can provide evidence about the severity of Haagenson's impairments and how they affect her ability to work. The only reason that the ALJ offered for rejecting their opinions is that they are not 'acceptable medical sources' within the meaning of the federal regulation. However, the regulation already presumes that nurses and counselors are non-acceptable medical sources, yet still requires the ALJ to consider them as 'other sources.'") (citations omitted); White v. Berryhill, No. CV16111BLGSPWTJC, 2018 WL 1370528, at *11 (D. Mont. Mar. 1, 2018) ("The fact that [licensed clinical professional counselor] Linse–Frost is not an acceptable medical source is not, in and of itself, a germane reason to afford her opinion [partial] weight"); Davis v. Comm'r of Soc. Sec., No. 1:16 CV 2446, 2018 WL 1377790, at *8 (N.D. Ohio Mar. 19, 2018) ("[T]he only reason provided by the ALJ for rejecting these two opinions was because the physical therapists were not 'acceptable medical sources.' This is simply insufficient and does not comport with SSR 06-03p's requirement that an ALJ 'explain the weight given to [such] opinions . . . or otherwise ensure that the discussion of the evidence in the determination or decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case.'")(citing SSR 06-03p, 2006 WL 2329939, at *6); Canales v. Comm'r of Soc. Sec., 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010) (remanding where

decision unreviewable because the Court is unable to follow the ALJ's reasoning as to Ms. Dockery's assessment of Plaintiff's condition. See, e.g., Stevens, 2015 WL 5254299, at *6-7; Haagenson, 656 Fed. App'x 800; White, 2018 WL 1370528, at *11; Davis, 2018 WL 1377790, at *9; Canales, 698 F. Supp. 2d at 344. Because the ALJ assigned Ms. Dockery's opinion partial weight solely because she is not an acceptable medical source, the decision is inconsistent with SSR 06-03p and must be remanded. See id. Alternatively, to the extent the ALJ did not realize she had the legal authority to assign Ms. Dockery's assessment great weight, remand is also required because the ALJ applied an improper legal standard. See id.

Second, the ALJ also fails to acknowledge, much less adequately weigh or address, relevant limitations Ms. Dockery identified. Chief among these is Ms. Dockery's conclusion that Plaintiff regularly "lose[s] hours of her day" due to the severity of her impairments. (Tr. at 758.) The ALJ never mentioned this potential limitation in her decision, but the vocational expert in this case testified that if Plaintiff was off task more than ten percent of the time, she would be unable to perform any jobs in the national economy. (Tr. at 82.) Consequently, the ALJ's failure to address the issue undermines the Court's ability to review the administrative decision, because it is unclear whether they ALJ in this case implicitly discounted Plaintiff's purported "time loss" for a valid though unarticulated reason, or whether she simply ignored it altogether. While an ALJ does not have a general obligation to discuss every bit of evidence in the record, see Fischer v. Barnhart, 129 Fed. App'x 297, 303 (7th Cir. 2005); Black v. Apfel, 143 F.3d 383, 386 (8th Cir. 1998), she does have a duty "to resolve conflicts in the evidence,"

---

"[t]he ALJ disregarded Rodriguez's opinion simply because it was the opinion of a social worker, not on account of its content or whether it conformed with the other evidence in the record").

Slaughter v. Barnhart, 124 F. App'x 156, 157 (4th Cir. 2005). The ALJ failed to discharge that duty here.

Third, the ALJ compounds her errors—identified above—by failing to acknowledge or discuss Ms. Dockery's treatment notes. The record exhibit that contains Ms. Dockery's letter also contains these notes. (Tr. at 759-62.) These notes describe Plaintiff as demonstrating poor concentration and memory, changes in memory, confusion, paranoia, the tendency to "lose time," and an inability to "account for time" a "couple of times per month." (Tr. at 761-62.) Ms. Dockery's treatment notes also attribute to Plaintiff a Global Assessment of Functioning ("GAF") score of 45 on March 14, 2016, which is indicative of serious impairments.[9] (Tr. at 760.) Yet, in addition to failing to discuss these notes at all, the ALJ also erroneously stated in her decision that "assessments of [Plaintiff's] global functioning have fallen between fifty and sixty during the period at issue in this decision." (Tr. at 17.) This is simply incorrect, and suggests that the ALJ may not have considered Ms. Dockery's treatment notes at all, despite repeatedly stating in her decision that she considered the entire record. (Tr. at 13, 15, 19.) The Court is ordinarily entitled to rely on an ALJ's representation that she considered the entire record absent some reason to conclude otherwise. See Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014) (citing Hackett v. Barnhart, 395 F.3d 1168, 1173

---

[9] The fourth edition of the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders ("DSM–IV") included a numeric Global Assessment of Functioning ("GAF") scale ranging from 0 to 100 used by mental health professionals to rate social, occupational and psychological functioning "on a hypothetical continuum of mental health-illness." DSM–IV 34 (Am. Psychiatric Ass'n, 4th Ed. 1994). Scores between 41 and 50 indicate serious symptoms (such as suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job). Id. Although the more recent edition of the DSM abandoned the use of GAF scoring, the Social Security Administration has instructed ALJs to continue to consider GAF scores as medical opinion evidence in tandem with "all the evidence about a person's functioning." Sizemore v. Berryhill, 878 F.3d 72, 82 (4th Cir. 2017) (quoting Emrich v. Colvin, 90 F. Supp. 3d 480, 492 (M.D.N.C. 2015)).

(10th Cir. 2005)). Here, however, there is some evidence—i.e., the ALJ's failure to address Ms. Dockery's treatment notes coupled with the ALJ's misrepresentation of the GAF scores in the record—that the ALJ did not review or consider Ms. Dockery's treatment notes at all.

Fourth, the Commissioner's arguments to the contrary are not persuasive. The Commissioner contends that Plaintiff's longitudinal treatment history, as articulated by the ALJ, adequately supports the ALJ's decision not to adopt Ms. Dockery's conclusion that Plaintiff "may never be able to function entirely." (Def.'s Br. at 7.) However, this contention misses the point. Ms. Dockery's letter and treatment notes—described in greater detail above—contain more than a statement that Plaintiff may never function properly but also contain evidence that ought to be reconciled with the remainder of the record in the first instance by the ALJ. As noted, this includes a GAF score indicating serious problems, as well as evidence that Plaintiff disassociates and loses time. Ms. Dockery's treatment notes also indicate that Plaintiff has crying spells twice daily (Tr. at 761), which is inconsistent with the ALJ's conclusion that her crying spells and panic attacks—including the one that occurred at her administrative hearing and which required the hearing to break while she composed herself—were "rare." (Tr. at 17, 75.) Again, it is the role of the ALJ, not of this Court, to reconcile evidence such as this in the first instance.

After careful consideration of the record, the Court recommends remand of this case to the ALJ with instructions to consider and weigh all of the relevant evidence of record in accordance with the Act. Given that this determination overlaps with the remaining issues raised by Plaintiff, and in light of the recommendation of remand, the remaining issues need

not be further addressed by the Court at this time.[10] None of this necessarily means that Plaintiff is disabled under the Act, and the Court expresses no opinion on that question.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be REVERSED, and that the matter be REMANDED to the Commissioner under sentence four of 42 U.S.C. § 405(g). The Commissioner should be directed to remand the matter to the ALJ for proceedings consistent with this Recommendation. To this extent, Defendant's Motion for Judgment on the Pleadings [Doc. #13] should be DENIED, and Plaintiff's Motion for Judgment on the Pleadings [Doc. #11] should be GRANTED. However, to the extent that Plaintiff's motion seeks an immediate award of benefits, it should be DENIED.

This, the 1st day of August, 2019.

/s/ Joi Elizabeth Peake
United States Magistrate Judge

---

[10] The Court does note that Plaintiff's second assignment of error raises similar concerns. Specifically, the ALJ's recitation of the evidence includes findings that support the ALJ's conclusion, without discussing other severe symptoms reflected in the medical records. See Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) ("An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding."). For example, the ALJ states that Plaintiff's panic attack at the hearing was "sharply inconsistent" with the mental health evidence in the record, citing to records from the Morehead Pain Management Center to find that she "continues to be very active with normal muscle strength and control of her psychological symptoms through compliance with appropriately prescribed medications." (Tr. at 16.) However, Plaintiff was not treated at the Morehead Pain Management Center for her mental health impairments, and other records show ongoing mental health symptoms that were not controlled by medication, or were only controlled for short periods of time (Tr. at 738, 739, 740, 741, 742-43, 744, 745, 746, 757, 761), and even the Morehead Pain Management Center notes reflect that Plaintiff attempted physical therapy but is agoraphobic and had increased anxiety and had to leave the first session (Tr. at 787). The ALJ does not appear to acknowledge or discuss this evidence. Indeed, the ALJ refers to the "most recent evidence of mental health treatment available in the record" reflecting symptoms in March and September 2014, but the ALJ does not discuss evidence from later 2014, 2015, and 2016. In addition, the ALJ cites to notes in 2012 and 2014 that Plaintiff was "doing great," and "doing fine," but the ALJ fails to include the remainder of those same notes, including the February 2012 note that "further review reveals that she is having panic like episodes and continues to be withdrawn and somewhat agoraphobic overall" (Tr. at 697), and 2014 notes that she has "a lot of anxiety peeling off her palm skin compulsively, frequent panic attacks about 4 times a week" (Tr. at 738). It is up to the ALJ to address and resolve this evidence in the first instance.